UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------×
CHRISTOPHER ROSALIE,

       *Plaintiff,*                                         18 CV 2064

    *v.*

                                                          **COMPLAINT**

SUPREME GLASS CO., INC.,

       *Defendant.*
------------------------------------------------------------------------×

       Plaintiff Christopher Rosalie, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendant Supreme Glass Co., Inc. ("Supreme Glass"), as follows:

### PRELIMINARY STATEMENT

       1.      Mr. Rosalie worked in purchasing, customer service, and collections at Supreme Glass, a glass and window installation and repair company operating in the New York City metropolitan area. Mr. Rosalie, who identifies as gay and gender nonconforming, was the only openly lesbian, gay, bisexual, or transgender (LGBT) employee at Supreme Glass throughout his employment. Supreme Glass's management and employees regularly subjected Mr. Rosalie to discrimination based on his sexual orientation and gender nonconformity, including telling him that being gay was a "mental disorder" and mocking his clothing as stereotypically gay and feminine. When Mr. Rosalie complained, Supreme Glass trivialized his concerns and, shortly afterward, terminated his employment.

       2.      Mr. Rosalie seeks damages and costs against Supreme Glass for discriminating against him based on his sexual orientation and gender nonconformity by subjecting him to a hostile work environment and terminating his employment and retaliated against him for his complaints about discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title

1

VII"), 42 U.S.C. §§ 2000e *et seq.*, and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code §§ 8-101 *et seq*.

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

3. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under Title VII.

4. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

6. Mr. Rosalie filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on September 20, 2017, related to the discriminatory conduct described in this Complaint. It has now been over 180 days since Mr. Rosalie's EEOC charge was filed.

## TRIAL BY JURY

7. Plaintiff respectfully requests a trial before a jury.

## PARTIES

8. Mr. Rosalie, at all times relevant hereto, was and is a resident of Kings County in the State of New York.

9. Upon information and belief, at all times relevant hereto, Supreme Glass was and is a corporation organized under the laws of the State of New York with its principal place of business located at 30-01 37th Avenue, Long Island City, New York 11101 in Queens County.

**STATEMENT OF FACTS**

10. On or about November 3, 2014, Mr. Rosalie began working at Supreme Glass.

11. Although Supreme Glass never gave Mr. Rosalie an official job title, he performed work in Supreme Glass's purchasing, customer service, and collections departments, including ordering materials and getting price estimates from vendors, handling customer orders, responding to customer calls, and collecting and researching unpaid invoices.

12. Mr. Rosalie identifies as gay and gender nonconforming, and he was out to his coworkers and supervisors throughout his employment at Supreme Glass.

13. When the subject came up in conversation, Mr. Rosalie was open with his colleagues about his same-sex relationships and about the fact that he does not conform to masculine gender expectations and stereotypes.

14. To Mr. Rosalie's knowledge, he was the only LGBT employee at Supreme Glass throughout his employment.

15. In and around 2015, Supreme Glass hired Jackie Miranda-Lorenzo as Office Manager, and she became Mr. Rosalie's direct supervisor.

16. Mr. Rosalie immediately noticed that Ms. Miranda-Lorenzo treated him less well than his straight and gender-conforming counterparts.

17. While Ms. Miranda-Lorenzo interacted with Mr. Rosalie's straight and gender-conforming coworkers in a friendly, respectful manner, she singled Mr. Rosalie out, treated him with harshness and hostility, and chastised him over trivial errors for which other employees were never disciplined.

18. Ms. Miranda-Lorenzo gladly assisted Mr. Rosalie's straight and gender-conforming coworkers when they had questions or encountered problems, but she responded

irritably and aggressively whenever Mr. Rosalie spoke to her, regularly snapping at him, mocking him, or reprimanding him for "interrupting" her.

19. Ms. Miranda-Lorenzo was polite and friendly to the other two male Supreme Glass employees who worked in Mr. Rosalie's department, Anthony Vlastos and Mahammad "Zee" Zahid, both of whom are straight and gender conforming.

20. Ms. Miranda-Lorenzo referred to Mr. Vlastos as her "bestie" and to Mr. Zahid as her "beloved Zee," while she ostracized Mr. Rosalie and treated him with rudeness and hostility.

21. Ms. Miranda-Lorenzo's discriminatory treatment only escalated over the course of Mr. Rosalie's tenure at Supreme Glass.

22. On one occasion, while Mr. Rosalie was in the break room having lunch, he overheard Ms. Miranda-Lorenzo say to Mr. Rosalie's coworker, Sylvia Alvarez, in a hateful and condescending tone, "He's a homosexual [in reference to a gay relative of Ms. Miranda-Lorenzo's], but, you know, it is what it is."

23. Ms. Miranda-Lorenzo made this homophobic remark knowing full well that Mr. Rosalie was in earshot.

24. Mr. Rosalie understood that Ms. Miranda-Lorenzo had intended him to hear the comment; he was offended, and felt targeted and harassed by Ms. Miranda-Lorenzo.

25. On or about April 14, 2016, the topic of romantic relationships came up during a conversation between Ms. Miranda-Lorenzo and Mr. Rosalie.

26. Ms. Miranda-Lorenzo, who was aware of Mr. Rosalie's sexual orientation and gender nonconformity, told Mr. Rosalie that "being gay is a mental disorder."

27. Mr. Rosalie told Ms. Miranda-Lorenzo how untrue and offensive her statement was.

28. Ms. Miranda-Lorenzo dismissed Mr. Rosalie's reaction to her comment and complaint and only responded with more discriminatory comments, referring to an unnamed "article" she had purportedly read as support for her discriminatory statements that gay individuals "feel things on a higher level than straight people" and are "more dramatic."

29. Mr. Rosalie was deeply upset by Ms. Miranda-Lorenzo's homophobic remarks and attempted to address them again with her on or about the following day, April 15, 2016.

30. This time, Ms. Miranda-Lorenzo denied making any comments whatsoever about Mr. Rosalie's sexual orientation.

31. When Mr. Rosalie pressed further, Ms. Miranda-Lorenzo then admitted that she had said that being gay is a "genetic disorder," rather than a "mental disorder"—as though it were somehow less disparaging or offensive to describe Mr. Rosalie's sexual orientation as a "genetic disorder."

32. When Mr. Rosalie reminded Ms. Miranda-Lorenzo that, in fact, she had told him that being gay was a "mental disorder," Ms. Miranda-Lorenzo sarcastically apologized.

33. Ms. Miranda-Lorenzo's mocking "apology" was meant to stop the conversation and again dismiss Mr. Rosalie's reaction; Ms. Miranda-Lorenzo refused to take any responsibility for her actions.

34. When Mr. Rosalie did not accept Ms. Miranda-Lorenzo's apology, as it clearly was not genuine, Ms. Miranda-Lorenzo told Mr. Rosalie that she believed he was trying to "intimidate" her and "trying to play the victim card."

35. Realizing that Ms. Miranda-Lorenzo would not take his concerns about sexual orientation and gender discrimination seriously, Mr. Rosalie reported her offensive conduct to Mark Eschelbacher, the president and owner of Supreme Glass.

36. Mr. Eschelbacher was likewise refused to address the issue; he failed to respond to Mr. Rosalie whatsoever for two days, then responded only that he would "talk to [Ms. Miranda-Lorenzo]."

37. After hearing nothing further from Mr. Eschelbacher for weeks, Mr. Rosalie followed up with him in and around May 2016, telling him that he continued to feel targeted by Ms. Miranda-Lorenzo and was upset with Supreme Glass's failure to take any discernable action to correct the clear sexual orientation and gender discrimination.

38. In response, Mr. Eschelbacher trivialized Ms. Miranda-Lorenzo's behavior and dismissed Mr. Rosalie's concerns.

39. Relying only on the same false stereotypes about gay people's sensitivity and emotional temperaments as Ms. Miranda-Lorenzo, Mr. Eschelbacher told Mr. Rosalie, "You misinterpreted [Ms. Miranda-Lorenzo's offensive comments]. You read into it," and told Mr. Rosalie that Mr. Rosalie was "overly sensitive" and that he did not "let things go."

40. Mr. Eschelbacher then told Mr. Rosalie, "The reason that Ms. Miranda-Lorenzo treats you the way she does is because things are going to change at Supreme Glass," which statement he would not explain further.

41. Again, Supreme Glass's management blamed Mr. Rosalie, the victim, for Supreme Glass's discrimination and harassment.

42. Upon information and belief, Mr. Eschelbacher did not interview Ms. Miranda-Lorenzo or otherwise do anything to investigate Mr. Rosalie's complaint.

43. Mr. Eschelbacher merely dismissed Mr. Rosalie's report of discrimination outright.

6

44. After Mr. Rosalie's complaints about discrimination, Supreme Glass's harassment of him intensified even further.

45. In subsequent conversations, Mr. Eschelbacher and Ms. Miranda-Lorenzo continued to make clear their prejudice against LGBT individuals.

46. When Mr. Rosalie told Ms. Miranda-Lorenzo that he does not identify with male or female gender roles, she responded by mocking and invalidating his gender nonconformity, stating in a derisive, hostile tone, "You're a man!"

47. Mr. Eschelbacher began to make offensive comments to Mr. Rosalie, as well, such as, "I just passed by your favorite streets—Christopher and Gay Street."

48. Mr. Eschelbacher disparaged Mr. Rosalie's clothing as "gay" or effeminate, telling Mr. Rosalie, "When I met you, I thought you were gay because you were dressed very GQ."

49. Mr. Eschelbacher asked Mr. Rosalie inappropriate, offensive questions about a Supreme Glass customer, such as, "Do you think this customer's gay?  Have you been to his apartment?"

50. Mr. Rosalie was offended and uncomfortable, and when Mr. Rosalie said that he did not know the customer and did not know what the customer's sexual orientation was, Mr. Eschelbacher asked, "Do you think you can tell from his voice?"

51. On another occasion, a Supreme Glass vendor named Michael Davis, who is gay, had come in to drop off the work he had done.

52. Mr. Davis spent a few minutes speaking with Mr. Eschelbacher in his office.

53. After Mr. Davis left Mr. Eschelbacher's office, Mr. Eschelbacher said to Mr. Rosalie, using a mockingly effeminate tone, "I think he's one of your people."

54. On another occasion, when a UPS delivery person did not pick up a package from Supreme Glass, Mr. Eschelbacher mockingly remarked to Mr. Rosalie, while looking down at Mr. Rosalie's groin, "Maybe he didn't like your package."

55. Mr. Rosalie continued to voice his offense at these comments about his sexuality and gender.

56. Mr. Eschelbacher grew increasingly hostile in response to Mr. Rosalie's complaints about discrimination.

57. For example, Mr. Eschelbacher threw stacks of papers at Mr. Rosalie in attempts to frighten and intimidate him.

58. As a result of the constant discrimination and harassment, Mr. Rosalie began to suffer severe depression and anxiety.

59. Mr. Rosalie dreaded going to the Supreme Glass office, afraid to return to the increasingly hostile work environment at Supreme Glass, and started experiencing bouts of depression and frequent anxiety attacks.

60. Mr. Rosalie's physician ultimately needed to prescribe Mr. Rosalie medication for these anxiety attacks so that he was able to function at work in the face of the ongoing discrimination and abuse.

61. Mr. Eschelbacher attempted to fabricate performance deficiencies in an effort to set Mr. Rosalie up for termination.

62. For example, Mr. Eschelbacher told Mr. Rosalie that a Supreme Glass vendor had complained to Supreme Glass about Mr. Rosalie on several occasions.

63. However, when Mr. Rosalie spoke with the vendor in question and asked whether he had ever had any complaints about Mr. Rosalie, the vendor was shocked and responded that

he had never complained about Mr. Rosalie and had, on the contrary, "always enjoyed dealing with" him.

64. In and around June 2017, Mr. Eschelbacher suddenly and unprecedentedly threatened Mr. Rosalie's employment in front of Ms. Miranda-Lorenzo, telling Mr. Rosalie that, if "mistakes" Mr. Rosalie had supposedly made did not improve within two weeks, Supreme Glass would terminate Mr. Rosalie's employment.

65. Not knowing what "mistakes" Mr. Eschelbacher was referring to, Mr. Rosalie asked him to clarify, as he hoped to explain and resolve any alleged performance deficiencies.

66. Yet Mr. Eschelbacher cut Mr. Rosalie off, refusing to allow him to speak and refusing to identify any "mistakes," let alone allow Mr. Rosalie to correct them.

67. Shortly afterward, on or about June 13, 2017, Supreme Glass terminated Mr. Rosalie's employment on the grounds that Mr. Rosalie had failed to "include notes on an order."

68. When Mr. Rosalie asked to look at the order in question, Supreme Glass refused and would only reiterate that his termination would stand.

69. In addition to refusing to substantiate this criticism, this supposed "mistake" should not have merited termination: Notes frequently disappeared from orders, as all Supreme Glass employees could edit order notes, and notes not being included on orders was a common issue.

70. To Mr. Rosalie's knowledge, no other Supreme Glass employee had ever been disciplined for this issue before, much less terminated.

71. In reality, Supreme Glass terminated Mr. Rosalie's employment because of his sexual orientation and gender nonconformity and in retaliation for his complaints about discrimination.

9

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Hostile Work Environment in Violation of Title VII**

72. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 71 with the same force as though separately alleged herein.

73. Title VII prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of sex, including sexual orientation.

74. Supreme Glass discriminated against Mr. Rosalie on the basis of his sex by subjecting him to a hostile work environment because of his sexual orientation and gender, including discriminatory comments and harassment.

75. As such, Supreme Glass has violated Title VII.

76. As a direct and proximate consequence of Supreme Glass's sex discrimination, Mr. Rosalie has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

77. Supreme Glass's discriminatory treatment of Mr. Rosalie was willful and/or in reckless disregard of Mr. Rosalie's protected rights. Accordingly, Mr. Rosalie is entitled to an award of punitive damages against Supreme Glass.

### SECOND CAUSE OF ACTION
**Wrongful Termination in Violation of Title VII**

78. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 77 with the same force as though separately alleged herein.

79. Title VII prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of sex, including sexual orientation.

80. Supreme Glass discriminated against Mr. Rosalie on the basis of his sex by terminating his employment based on his sexual orientation and gender.

81. As such, Supreme Glass has violated Title VII.

82. As a direct and proximate consequence of Supreme Glass's sex discrimination, Mr. Rosalie has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

83. Supreme Glass's discriminatory treatment of Mr. Rosalie was willful and/or in reckless disregard of Mr. Rosalie's protected rights. Accordingly, Mr. Rosalie is entitled to an award of punitive damages against Supreme Glass.

### THIRD CAUSE OF ACTION
### Retaliation in Violation of Title VII

84. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 83 with the same force as though separately alleged herein.

85. Title VII prohibits an employer from retaliating against an employee for engaging in protected activity under Title VII.

86. Mr. Rosalie engaged in protected activity under Title VII when he properly complained to Supreme Glass about sex discrimination unlawful under Title VII.

87. Supreme Glass retaliated against Mr. Rosalie by subjecting him to further discrimination and harassment and terminating his employment.

88. As such, Supreme Glass has violated Title VII.

89. As a direct and proximate consequence of Supreme Glass's retaliation, Mr. Rosalie has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## FOURTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL

90. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 89 with the same force as though separately alleged herein.

91. The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of sexual orientation or gender, including sex stereotyping.

92. Supreme Glass violated the NYCHRL when it subjected Mr. Rosalie to a hostile work environment based on his sexual orientation and gender, including discriminatory comments and harassment.

93. As a direct and proximate consequence of Supreme Glass's sexual orientation and gender discrimination, Mr. Rosalie has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

94. Supreme Glass's discriminatory treatment of Mr. Rosalie involved a conscious disregard of Mr. Rosalie's rights or conduct so reckless as to amount to such disregard. Accordingly, Mr. Rosalie is entitled to an award of punitive damages against Supreme Glass.

## FIFTH CAUSE OF ACTION
### Wrongful Termination in Violation of the NYCHRL

95. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 94 with the same force as though separately alleged herein.

96. The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of sexual orientation or gender, including sex stereotyping.

97. Supreme Glass violated the NYCHRL when it terminated Mr. Rosalie's employment based on his sexual orientation and gender.

98. As a direct and proximate consequence of Supreme Glass's sexual orientation and gender discrimination, Mr. Rosalie has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

99. Supreme Glass's discriminatory treatment of Mr. Rosalie involved a conscious disregard of Mr. Rosalie's rights or conduct so reckless as to amount to such disregard. Accordingly, Mr. Rosalie is entitled to an award of punitive damages against Supreme Glass.

### SIXTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

100. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 99 with the same force as though separately alleged herein.

101. The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

102. Mr. Rosalie engaged in protected activity under the NYCHRL when he properly complained to Supreme Glass about sexual orientation and gender discrimination unlawful under the NYCHRL.

103. Supreme Glass retaliated against Mr. Rosalie by subjecting him to further discrimination and harassment and terminating his employment.

104. As such, Supreme Glass has violated the NYCHRL.

105. As a direct and proximate consequence of Supreme Glass's retaliation, Mr. Rosalie has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.  For the first cause of action, damages to be determined at trial;

B.  For the second cause of action, damages to be determined at trial;

C.  For the third cause of action, damages to be determined at trial;

D.  For the fourth cause of action, damages to be determined at trial;

E.  For the fifth cause of action, damages to be determined at trial;

F.  For the sixth cause of action, damages to be determined at trial; and

G.  For such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 6, 2018

By: s/ Walker G. Harman, Jr.
Walker G. Harman, Jr.
Edgar M. Rivera
THE HARMAN FIRM, LLP
234 Fifth Avenue, 4th Floor, #409
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*