UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CHRISTOPHER ROSALIE,

                Plaintiff,                MEMORANDUM AND ORDER
                                                    18-CV-02064

    - against -

SUPREME GLASS CO., INC.,

                Defendant.
-----------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Christopher Rosalie brings this action against his former employer, Supreme Glass Co., Inc. ("Supreme"), asserting claims of hostile work environment, wrongful termination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §§ 2000e *et seq*. and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq*. Supreme now moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, Supreme's motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

       Rosalie identifies as gay and gender non-conforming.[1] (Rosalie Decl. ¶ 2). From November 2014 to June 2017, he worked for Supreme, a glass company that installs and repairs windows throughout New York City.[2] (*See id.* ¶¶ 3, 160; Pl.'s 56.1 Resp. ¶ 3). Rosalie was hired by Supreme's President, Mark Eschelbacher, to work as a purchaser of the company's inventory.

---

[1] All but the most basic facts are in dispute. As is required at this stage, the Court draws all reasonable inferences in Rosalie's favor from the record, including the Declaration of Christopher Rosalie (ECF No. 30, "Rosalie Decl."), Plaintiff's Counterstatement of Material Facts (ECF No. 32, "Pl.'s 56.1 Resp."), the Deposition of Mark Eschelbacher (ECF No. 24-3, "Eschelbacher Dep."), the Deposition of Christopher Rosalie (ECF No. 24-4, "Rosalie Dep."), and the Deposition of Jacqueline Miranda-Lorenzo (ECF No. 24-5, "Miranda Dep.").

[2] Rosalie previously worked for a jewelry company for over 20 years. (Rosalie Dep. 17:5-7).

1

(Rosalie Dep. 67:9-12). During his employment, Rosalie was also assigned to Supreme's customer service and collections departments. (Rosalie Decl. ¶¶ 7–8). At all relevant times, he was open about his sexual orientation and gender. (*Id.* ¶ 4; Rosalie Dep. 111:5-15).

Rosalie describes Supreme's workplace as chaotic. He details a disorganized operation where he received little to no training and procedures frequently changed. (*See* Rosalie Decl. ¶¶ 10–15, 179). Supreme maintained thousands of customers, many of whom frequently called about problems with outstanding work orders. (*Id.* ¶ 179). Adding to the disarray, Eschelbacher encouraged his staff to lie to customers about the status of ongoing projects. (*Id.* ¶ 27).

Dynamics at Supreme supposedly worsened in 2015, when Jacqueline Miranda-Lorenzo was promoted to Customer Service and Office Manager. (*Id.* ¶ 37). At that time, Miranda became Rosalie's immediate supervisor. (*Id.*). Soon after, Rosalie came to believe that she treated him differently than his coworkers. (*Id.* ¶¶ 38–39). She allegedly bullied Rosalie throughout his employment, often singling him out, publicly disciplining him, and chastising him for "trivial errors." (*Id.* ¶ 41). Rosalie's suspicion was seemingly confirmed when he heard Miranda describe a gay family member by saying: "He's a homosexual, but, you know, it is what it is." (*Id.* ¶ 66). On another occasion, Rosalie told Miranda that he identified as neither male nor female, to which she exclaimed: "You're a man!" (*Id.* ¶ 124).

Tensions came to a head on April 14, 2016, when Miranda allegedly told Rosalie that she believed "being gay is a mental disorder." (Rosalie Dep. 88:20–22; Rosalie Decl. ¶ 70). When Rosalie told her that was "untrue" and "offensive," Miranda dismissed his objection and referenced a New York Times article in support of her conviction that gay individuals "'feel things on a higher level than straight people' and are 'more dramatic.'" (Rosalie Decl. ¶¶ 72–73).

The next day, Rosalie confronted Miranda about her comments. After she denied making the statements, she admitted to saying that being gay is a "genetic disorder." (*Id.* ¶ 76). Miranda sarcastically apologized and accused Rosalie of trying to intimidate her and "play[ing] the victim card." (*Id.* ¶¶ 78–80).

According to Rosalie, there was no procedure for reporting discrimination at Supreme. (Rosalie Dep. 202:3-12). He also claims that he was not provided with an employee handbook, nor any anti-discrimination policies. (*Id.*). In fact, a co-worker once warned Rosalie that reporting discrimination was useless because Eschelbacher would not take any action. (Rosalie Decl. ¶ 63). Rosalie nevertheless reported Miranda's April 14 comment to Eschelbacher, who said he would "talk" to Miranda about the incident. (*Id.* ¶ 83). Eschelbacher also told Rosalie that he was "sensitive" and needed to "let things go." (Rosalie Dep. 88:12-24).

Eschelbacher did take some action, however. The record shows that he issued Miranda a written warning for her offensive remarks. (ECF No. 24-10). The document reads, "First Warning Notice," with the following question and answer: "Has the employee been previously warned? Yes." (*Id.*). The document suggests that this warning was not Miranda's first. (*See* Eschelbacher Dep. 186:19–187:16). Under a description of the incident, Eschelbacher wrote "Jackie made offending gay comment to Christopher Rosalie." (ECF No. 24-10). Although the notice contains blank boxes listing options for "Actions To Be Taken," none are checked off.

Miranda's next infraction came just two months later, after an employee complained that she referred to someone as "Jew Boy." (Rosalie Dep. 34:6-14). In response, Eschelbacher issued Miranda a "Second Warning Notice," writing on the form: "If Jackie makes a third offense she will be suspended for one week. A fourth violation will result in dismissal." (ECF No. 24-11).

Despite Rosalie's complaint to Eschelbacher, Miranda's misconduct continued. (Rosalie Decl. ¶ 85). On one occasion, she approached Rosalie's desk and rearranged his belongings without justification. (Rosalie Dep. 109:2-4). On another, she apparently grabbed his notebook and ridiculed his handwriting in front of others. (*Id.* at 108:18-24). Meanwhile, Miranda was cordial with Rosalie's coworkers, referring to them in endearing terms such as "bestie" and "beloved." (Rosalie Decl. ¶ 44). On July 13, 2016, as their relationship strained further, Miranda apparently told a coworker, while glancing at Rosalie: "People in this office hear things I say and then twist them around so you have to be careful of the things you say." (*Id.* ¶ 107).

According to Eschelbacher, Supreme's employee handbook then in effect contained an anti-discrimination policy and system of progressive discipline. (Eschelbacher Dep. 41:24–42:14; ECF No. 24-6). Under that system, "discriminatory remarks" result in a written warning after the first offense, suspension after the second, and dismissal after the third. (ECF No. 24-6 at 18). Had Eschelbacher adhered to the handbook, Miranda would have been suspended and terminated after her second and third infractions. (*Id.*).

For his part, Eschelbacher made his own offensive comments. Rosalie recounts occasions where Eschelbacher would ask him inappropriate questions, such as: "Do you think this customer's gay? Have you been to his apartment? Do you think you can tell from his voice?" (*Id.* ¶¶ 135, 137). When the United Parcel Service failed to pick up a shipment that Rosalie prepared, Eschelbacher allegedly remarked, "maybe he didn't like your package," while looking at Rosalie's groin. (*Id.* ¶¶ 141–142). Rosalie recalls another occasion when a gay vendor visited the office and Eschelbacher told Rosalie that: "I think he's one of your people." (*Id.* ¶ 140). In yet another instance, Eschelbacher texted Rosalie that: "I just passed by your favorite streets—Christopher and Gay Street." (*Id.* ¶ 126). Eschelbacher also allegedly disparaged Rosalie's clothing as "gay,"

4

telling him: "I knew you were gay the minute I saw you because you were dressed very GQ." (*Id.* ¶ 129).

Crude behavior was the norm at Supreme. One of his coworkers purportedly called Rosalie "Woody Woodpecker," which Rosalie understood as a derogatory term because, "like gay guys, woodpeckers like to peck on wood." (Rosalie Decl. ¶ 97). When Rosalie confronted him about the nickname, the employee denied it and allegedly turned to others in the office, yelling out: "[Everybody] listen to me. Did I ever call Chris Woody Woodpecker?" (Rosalie Dep. 119:9-10). Rosalie also heard reports that another employee referred to him as "that f**got." (*Id.* at 103:23-25). The same employee supposedly threatened to punch Rosalie, which Rosalie reported to Eschelbacher. (Rosalie Decl. ¶¶ 32–34). Eschelbacher, however, did not take action. (*Id.* ¶ 34). In an unrelated incident, the employee also repeatedly used the word "n**ger," and "went on a tirade about lesbian women and Jewish people." (*Id.* ¶ 55).

Against this backdrop, around June 2017, Rosalie once again complained to Eschelbacher about Miranda's demeanor towards him. (*Id.* ¶¶ 152–155). According to Rosalie, he informed Eschelbacher that "[Miranda] is being nice to everybody in the office except me." (Rosalie Dep. 129:23-25, 131:5-6). Rosalie did not tell Eschelbacher that he was being discriminated against because of his sexual orientation. (*Id.*).

Shortly thereafter, Rosalie was called into a meeting with Eschelbacher and Miranda, where Rosalie was informed that he would be terminated unless his performance improved. (Rosalie Decl. ¶ 156). When Rosalie asked what he could improve, Eschelbacher apparently refused to provide any details. (*Id.* ¶¶ 158–159). Up to that point, Rosalie had not received a formal evaluation since his 90-day performance review years earlier. (*Id.* ¶ 157). Then, on June 13, 2017, Eschelbacher terminated Rosalie's employment, citing a failure to "include notes on

5

various orders." (*Id.* ¶ 160). According to Rosalie, work orders contained a space for notes to be inputted regarding job specifications. (Rosalie Dep. 132:6-12). Eschelbacher, however, refused to show Rosalie the erroneous orders. (Rosalie Decl. ¶ 161).

To Rosalie's knowledge, no other employee was ever disciplined for failing to include "notes" on orders, despite it being a "common issue" at Supreme. (*Id.* ¶¶ 164–165). Rosalie testified that notes frequently disappeared because "anybody" could modify orders. (Rosalie Dep. 132:6-19). At least once, Rosalie cross-referenced completed orders he had printed with ones Miranda later accused him of leaving incomplete—at which time it appeared that the orders had been edited. (*Id.*). This left Rosalie feeling as if he was "being sabotaged." (*Id.*).

Rosalie now holds a nearly identical job at another glass company. (*Id.* ¶ 182). However, as a result of his time at Supreme, he claims to suffer from depression, anxiety, and is medicated for suicidal thoughts. (*Id.* ¶¶ 149–151).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (citations omitted). The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d

156, 164 (2d Cir. 2011) (citation omitted). The Court's role is one of "issue-finding," not "issue-resolution." *Ramirez v. New York City Bd. of Educ.*, 481 F. Supp. 2d 209, 216 (E.D.N.Y. 2007).

Although the same standard applies in employment discrimination cases, courts are particularly cautious to grant summary judgment where the employer's intent is at issue. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). In these cases, summary judgment is rarely granted because "a victim of discrimination is . . . seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence. . . . Consequently . . . where a defendant's intent and state of mind are placed at issue, summary judgment is ordinarily inappropriate." *Ramirez*, 481 F. Supp. 2d at 216 (quoting *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991)).

## DISCUSSION

### I. Hostile Work Environment

#### A. Title VII

To survive summary judgment, a plaintiff asserting a Title VII hostile work environment claim must show "(1) he '*subjectively* perceive[d] the environment to be abusive;' (2) the conduct alleged *objectively* created 'an environment that a reasonable person would find hostile or abusive;' and (3) that the 'work environment [was] abusive to employees *because of* their race, gender, religion, or national origin.'" *Cunningham v. New York Dep't of Labor*, 326 F. App'x 617, 620 (2d Cir. 2009) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). The environment must be "permeated with 'discriminatory intimidation, ridicule, and insult,' that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21. Relevant factors include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

7

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

Where conduct is severe or pervasive, an employer is only liable if "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Schwapp*, 118 F.3d at 110 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996)). If the harasser is a supervisor, and the harassment results in tangible employment action, the employer is strictly liable. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). However, when "the harassing employee is the victim's coworker, the employer is liable only if it was negligent in controlling working conditions." *Id.*

### i.        Objectively Severe or Pervasive Conduct

Supreme's principal argument is simple: the conduct at issue was not objectively severe or pervasive. Supreme insists that the only potentially hostile comments are Miranda's, which Rosalie has misconstrued and are too "isolated" to be actionable. (*See* ECF No. 26, "Br." at 11). A reasonable jury might disagree.

If a jury credited Rosalie's testimony, it could find that Miranda told him that being gay is a "mental" and "genetic disorder," that she ridiculed him for playing the "victim card," and purposefully misidentified his gender. Miranda made these comments while routinely demeaning or humiliating him in front of others. Meanwhile, Eschelbacher—Supreme's President—made "jokes" at Rosalie's expense, including that (1) Rosalie had been to a male customer's apartment because he was gay (Rosalie Decl. ¶ 135); (2) a UPS deliveryman did not like Rosalie's "package" (*Id.* ¶ 142); (3) a gay vendor was "one of [Rosalie's] people" (*Id.* ¶ 140); and (4) Rosalie's favorite streets were "Christopher and Gay," (*Id.* ¶ 126). These comments occurred in an office where a coworker allegedly threatened to punch Rosalie and was rumored to call him "that f**got."

Another employee allegedly called Rosalie, "Woody Woodpecker," because gay men "like to peck wood." (Rosalie Decl. ¶ 97). Supreme denies most of these facts and minimizes others, creating genuine issues of material fact as to whether the conduct was severe or pervasive.

While it is true that Title VII is not a general civility code, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (quoting *Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997)). This certainly is not an "egregious" case, but Rosalie presents enough issues of material fact to survive summary judgment.[3] As the Second Circuit has noted, "the line between boorish and inappropriate behavior and actionable [ ] harassment . . . is admittedly indistinct, [and] its haziness counsels against summary judgment." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 605 (2d Cir. 2006).

### ii.   Discrimination Because of Protected Class

Supreme also urges that the alleged harassment did not occur "because of" Rosalie's sexual orientation or gender. (Br. 12). Instead, it describes the conduct as "harsh" and "bullish" behavior attributable to Eschelbacher's aggressive leadership. That behavioral mischaracterization ignores the tenor of the offensive comments at issue, which are sex based on their face. In fact, Eschelbacher himself admits that Miranda's April 14 comment "[i]n and of itself" is "derogatory." (Eschelbacher Dep. 173:14-15). Thus, a reasonable jury could infer that Rosalie was subject to a hostile work environment because of his sexual orientation and gender.

---

[3] Indeed, a jury may well find that the conduct was neither severe nor pervasive.

9

### iii.     Imputable Conduct

Having established that a rational jury could find Supreme's work environment hostile, the inquiry next turns to whether Supreme may be vicariously liable. According to Supreme, Eschelbacher was its only "supervisor" within the meaning of Title VII because only he had the power to hire and fire employees. While that authority is relevant to the analysis, Supreme overstates its import. Our jurisprudence allows for a broader definition which includes employees who may "effect a 'significant change'" in another's employment status. *Vance*, 570 U.S. at 431 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Where, as here, an employer "confines decision-making power to a small number of employees, 'those individuals will have limited ability to exercise independent discretion when making decisions and will likely rely on other workers who actually interact with the affected employee[,]' under these circumstances 'the employer may be held to have effectively delegated the power to take tangible employment actions to the employees on whose recommendation it relies.'" *Morris v. New York City Health & Hosp. Corp.*, No. 09-CV-5692 (MKB) (ST), 2018 WL 4762247, at *8 (E.D.N.Y. Sept. 30, 2018) (quoting *Vance*, 570 U.S. at 447).

A rational jury could find that Miranda effected a significant change in Rosalie's employment status. Indeed, she may have precipitated his termination by providing negative reports of his performance to Eschelbacher. (*See, e.g.*, Rosalie Decl. ¶ 86). In June 2017, she joined Eschelbacher in warning Rosalie that he would be terminated absent immediate improvements. (*Id.* ¶ 156). Because Rosalie reported to Miranda at the time, her input was critical to his retention. (Miranda Dep. 81:11-13, 82:5-8). Moreover, Supreme has argued that she did not exert "enormous influence" over the decision. (ECF No. 33 at 12). Even if true, a jury could

10

conclude that her influence was nonetheless significant. Thus, Rosalie has raised an issue of material fact as to whether Miranda was his "supervisor."

Even if Miranda was not a supervisor under Title VII, the conduct of Supreme's non-supervisory employees might still be imputable to the company. An employer is liable for the acts of its employees where it is "negligent in failing to prevent harassment from taking place. Evidence that an employer did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed [is] relevant." *Vance*, 570 U.S. at 449. Rosalie has presented evidence from which a rational juror could conclude that (1) Supreme did not have an anti-discrimination policy at the time Rosalie was an employee; (2) Supreme had an anti-discrimination policy but did not make it known to its employees; or (3) Supreme had an anti-discrimination policy in place but did not enforce it. Rosalie testified that he never received an employee handbook, he was unaware of a system for reporting discrimination, and was told on one occasion that reporting discrimination was futile. (Rosalie Dep. 202:3-12; Rosalie Decl. ¶ 63). On this basis, a jury could find that Supreme was negligent.

Equally problematic is the fact that Supreme had notice of potential misconduct. It appears that Eschelbacher received at least three complaints concerning offensive comments made by Miranda. Despite a policy that called for Miranda's suspension and dismissal after her second and third infractions, she received only warnings. Supreme's reluctance to enforce its anti-discrimination policy likely emboldened its employees to participate in discriminatory conduct without consequence. If true, Supreme was alerted to trouble in the workplace but negligently failed to act. Accordingly, summary judgment is denied as to Rosalie's hostile work environment claim under Title VII.

11

### B. NYCHRL

Rosalie's NYCHRL claim requires no different result. As is well settled, the NYCHRL is broader and more permissive than its federal counterpart. Unlike Title VII, a plaintiff may sustain an NYCHRL claim without demonstrating severe or pervasive conduct, so long as he is treated "less well" because of a discriminatory intent. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *see also Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (describing Title VII as a "floor" below which the NYCHRL cannot fall). Accordingly, the same factual issues precluding summary judgment on Rosalie's Title VII claim bear the same effect under the NYCHRL.

## II. Wrongful Termination

### A. Title VII

Title VII discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff must establish a *prima facie* case by demonstrating that (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination. *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006). Second, if a plaintiff makes a *prima facie* case, the burden shifts to the defendant to articulate "a legitimate, non-discriminatory reason for the action." *Id.* Third, the burden shifts back to the plaintiff to show "that the employer's proffered reason is pretextual." *Id.*

#### i. Prima Facie Case

Supreme does not contest whether Rosalie belongs to a protected class, that he suffered an adverse employment action, or that his termination occurred in circumstances giving rise to an inference of discrimination. Indeed, Rosalie carries his "*de minimis*" burden as to each of those

elements. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Supreme does, however, challenge whether Rosalie has met his burden under the second prong, that his performance was satisfactory.

To demonstrate Rosalie's deficient performance, Supreme relies on Eschelbacher's and Miranda's testimony that they were dissatisfied with his work. Even if true, Rosalie need not demonstrate that Supreme was pleased with his performance. Rather, "all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001). Rosalie certainly meets that requirement. He was given a 90-day evaluation after the start of his employment.[4] (Rosalie Decl. ¶ 157). By all accounts, that evaluation was entirely positive. (*Id.*). Accordingly, Rosalie meets his *prima facie* burden.

### ii. Non-Discriminatory Reasons for Termination

As noted above, Supreme contends that it had a legitimate, non-discriminatory reason for terminating Rosalie, namely, his poor performance. Because a majority of the record is comprised of deposition testimony, Supreme's burden of production is not difficult to hurdle. Both Miranda and Eschelbacher testified that Rosalie's work left something to be desired. (*See, e.g.*, Miranda Dep. 82:12-14; Eschelbacher Dep. 117:21-25). Even Rosalie acknowledged certain shortcomings in his performance. (Rosalie Dep. 134:7-10). In light of these facts, Supreme has proffered a non-discriminatory reason for Rosalie's termination.

---

[4] The Court is also hard pressed to question Rosalie's professional qualifications when it appears undisputed that, prior to Supreme, he maintained employment at the same company for over 20 years. (Rosalie Dep. 17:5-7).

13

### iii. Pretext

Under the third and final *McDonnell Douglas* step, Rosalie must demonstrate that Supreme's proffered reason is pretextual. Pretext can be shown "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). A "rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Rosalie presents several bases for discrediting Supreme's proffered reasons: (1) Supreme's varying explanations for termination; (2) procedural irregularities; and (3) a dearth of evidence concerning Rosalie's deficient performance. While these arguments might fall short individually, in the aggregate, they satisfy Rosalie's burden.

Perhaps most problematic, Supreme offers what appears to be a *post hoc* explanation for Rosalie's dismissal. At the time of his termination, Rosalie was told that he "failed to 'include notes on various orders.'" (Rosalie Decl. ¶ 160). Supreme now contends that multiple vendors and customers refused to work with him. (*See* Br. 18). In support of its motion, Supreme offers a spreadsheet—created by Miranda after this action began—which purportedly lists those customers.[5] (ECF No. 24-7). Curiously, there is little indication that the customers' refusal to work with Rosalie served as a basis for his termination in June 2017. In fact, at her deposition,

---

[5] Jillian Williams, a former Supreme employee of 12 years, has submitted a declaration stating that she was fired under similar circumstances. (ECF No. 29-6). She, too, was told that Supreme lost accounts as a result of her mistakes. (*Id.* ¶ 39). However, Supreme allegedly continued servicing those accounts after Ms. Williams's departure. (Rosalie Decl. ¶¶ 173–176).

Miranda denied informing Rosalie or Eschelbacher of the complaints she received. (*See* Miranda Dep. 114:4-9). Even more telling, Miranda admittedly created the spreadsheet in order "to protect myself and my job" once she learned of this lawsuit. (*Id.* at 105:2-5). This after-the-fact explanation is suggestive of pretext. *See, e.g.*, *Kwan*, 737 F.3d at 847 (noting that a jury could infer pretext where employer presented new basis for termination after litigation began).

Supreme's uneven enforcement of its employment policies is further evidence of pretext. Supreme's handbook provided a progressive system of discipline for underperforming employees: a verbal warning for the first offense, a written warning for the second, and termination for the third. (ECF No. 24-6 at 17). According to the handbook, Rosalie should have received a written warning prior to his termination in June 2017. (*Id.*). Instead, he was immediately terminated after a verbal warning, in conflict with the procedures set forth in the handbook. Meanwhile, Miranda was afforded greater lenience. Although the handbook called for her suspension and termination after her second and third offenses, she only received warnings. This differential treatment—lenience in one instance and harsh enforcement in another—strengthens an inference of pretext.[6]

It also bears noting that the evidentiary support for Rosalie's poor performance is thin. Despite Rosalie's near three-year tenure at Supreme, it is somewhat unbelievable that Supreme cannot substantiate its position with further non-testimonial evidence. Instead, Supreme depends almost entirely on Miranda's and Eschelbacher's testimony that Rosalie made numerous mistakes. Rosalie's testimony, of course, contends that his performance was adequate—leaving significant credibility determinations for the jury.[7]

---

[6] The employee handbook also requires periodic employee evaluations after 30, 60, and 90 days of employment, and annually thereafter. (ECF No. 24-6 at 19). Rosalie, however, only received one formal evaluation after his first 90 days. (Rosalie Decl. ¶ 157).

[7] Supreme insists that the Court should not consider Rosalie's declaration offered in opposition to the motion because it contradicts his deposition testimony. (ECF No. 33 at 3). However,

15

Accordingly, Rosalie has demonstrated that Supreme's proffered non-discriminatory reasons were pretextual, and his Title VII claim survives.

### B. NYCHRL

As is well recognized, the "NYCHRL does not distinguish between claims of 'discrimination' and 'harassment' or hostile work environment, which is a term of art borrowed from the more restrictive Title VII jurisprudence." *Ibrahim v. Fidelity Fiduciary Brokerage Servs. LLC*, No. 19-CV-3821 (VEC), 2020 WL 107104, at *4 (S.D.N.Y. Jan. 9, 2020) (citing *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 75 (1st Dep't 2009)). Under the NYCHRL, a "plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). Rosalie has met his burden under the more stringent Title VII, thereby satisfying the prerequisites of the NYCHRL.

### III. Retaliation

#### A. Title VII

Rosalie's retaliation claim depends almost entirely upon his April 2017 complaint to Eschelbacher that Miranda was being "nicer" to others in the office. To establish a *prima facie* case of retaliation under Title VII, Rosalie must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v.*

---

Supreme merely cites paragraphs of Rosalie's counterstatement of facts and does not clearly identify the alleged contradictions.

16

*Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quoting *Jute*, 420 F.3d at 173). Rosalie, however, never makes it past the first prong.[8]

The record is devoid of evidence that Rosalie engaged in an actionable protected activity, which includes any action "taken to protest or oppose statutorily prohibited discrimination," *i.e.*, conduct that is prohibited by Title VII. *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 659 (E.D.N.Y. 2015) (citation omitted). "While it is unnecessary for an individual to specifically invoke the word discrimination when complaining in order to alert her employer to her protected activity, there must be some basis to conclude that the employer was aware that the plaintiff engaged in protected activity." *Lucio v. New York City Dep't of Educ.*, 575 F. App'x 3, 6 (2d Cir. 2014).

Rosalie's complaint to Eschelbacher in April 2017 does not qualify as a protected activity. (Rosalie Decl. ¶ 152). At his deposition, when asked if he complained about discrimination in April 2017, Rosalie responded that he told Eschelbacher that Miranda was "being nice to everybody in the office except me." (Rosalie Dep. 129:23–130:10). That did not signal that Rosalie was complaining of discrimination. Nor should Eschelbacher have interpreted as much. "The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009). "[A]mbiguous complaints that do not make the employer aware of alleged discriminatory

---

[8] Although Rosalie engaged in a protected activity around April 2016, that occurred approximately one year before his termination. Such a lapse in time, without more, is insufficient to sustain a claim of retaliation. *See, e.g.*, *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503 (S.D.N.Y. 2010) ("Most of the decisions in this Circuit that have addressed this issue have held that lapses of time shorter than even three months are insufficient to support an inference of causation."). Rosalie has not presented any compelling reasons why his June 2017 complaint should be viewed as a continuation of his prior complaint.

17

misconduct do not constitute protected activity." *International Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007). Even construing the facts in the light most favorable to him, Rosalie fails to meet his *prima facie* burden. Accordingly, Supreme's motion for summary judgment is granted with respect to Rosalie's Title VII retaliation claim.

### B. NYCHRL

Section 8–107 of the NYCHRL prohibits employers from retaliating "in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8–107(7). As with Title VII claims, plaintiffs asserting NYCHRL claims must show "that [they] engaged in a protected activity of which [the] employer was aware." *Ottoson v. SMBC Leasing & Fin., Inc.*, No. 13-CV-1521 (JPO), 2020 WL 881992, at *3 (S.D.N.Y. Feb. 24, 2020). Rosalie's failure to do so mandates the grant of summary judgment as to Rosalie's NYCHRL retaliation claim.

## CONCLUSION

For the reasons set forth above, Supreme's motion for summary judgment is granted as to Rosalie's retaliation claims and denied as to his hostile work environment and wrongful termination claims.

SO ORDERED.

Dated:      Brooklyn, New York
            October 23, 2020

/s/
I. Leo Glasser                                      U.S.D.J.